## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| THOMAS LOUKS and TAWNYA LOUKS | § § § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action: 3:23-cv-1451 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC, NATIONSTAR MORTGAGE LLC, and INSIGHT FINANCIAL CREDIT UNION, Inc., | § § § § § | |
| | § | |
| Defendants. | § § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Thomas and Tawnya Louks ("Plaintiffs"), by and through counsel, for their Complaint against Defendants, Equifax Information Services LLC**,** Trans Union LLC, and Nationstar Mortgage LLC, and Insight Financial Credit Union, Inc., jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.     Two of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, Nationstar Mortgage LLC Insight Federal Credit Union, Inc., are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*,

known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiffs, Thomas and Tawnya Louks, are natural persons residing in Brevard County, Florida, and are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c)**, and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans

Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.     Upon information and belief, Defendant Insight Federal Credit Union, Inc. which may also hereinafter be referred to as "Insight,"  "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Florida Corporation, that does substantial business in this judicial district  and may be served by delivering a summons to its Legal Department at its headquarters, 105 E. Robinson St., Ste. 100, Orlando, FL 32801-1655. Insight is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.     As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

8.    Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9.    Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district.

Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

### Background and Credit-Reporting Allegations for the Nationstar Account

11.     Upon information and belief, in or around May 2007 Plaintiffs secured a mortgage for their property located at 130 Feldman St SE, Palm Bay, FL 32909.

12.     Sometime thereafter, Nationstar Mortgage LLC acquired Plaintiffs' mortgage loan and assigned loan number 60836xxxx, hereinafter ("Nationstar mortgage account").

13.     On May 4, 2017, Plaintiffs jointly filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiffs' chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

14.     On December 6, 2017, Plaintiffs' Chapter 13 payment plan was confirmed. *See* Exhibit "A".

15.     Plaintiffs continued to make timely mortgage payments to their Nationstar mortgage account until the property was sold to or later acquired by Select Portfolio Servicing ("SPS") during the bankruptcy. *See* Exhibit "A".

16.     On September 22, 2022, Plaintiffs were discharged form their chapter 13 bankruptcy, and excepted from discharge Plaintiffs' SPS Mortgage. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "B".

17.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

18.     On November 3, 2022, Laurie K. Weatherford, Trustee for Plaintiffs' Chapter 13

Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiffs' Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "C".

19.    On or around December 7, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

20.    Throughout Plaintiffs' Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Nationstar and SPS mortgage accounts.

21.    After discharge, and to this day, Plaintiffs still live in the home and make timely and regular mortgage payments to the now SPS Mortgage, have historically made timely and regular payments to both the Nationstar Mortgage and SPS Mortgage, even after Plaintiffs' respective bankruptcies, and plan on continuing to make timely and regular mortgage payments to the SPS Mortgage.

22.    Sometime in January 2023, Plaintiffs obtained their three-bureau credit report and noticed that the Equifax and Trans Union credit report(s) were not accurate. Redacted copies of Plaintiff Thomas Louks's and Plaintiff Tawnya Louks's three-bureau credit reports are each attached hereto as Exhibits "D" and "E" respectively.

23.    Within the Equifax credit report Plaintiffs noticed that it reported the Nationstar mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Nationstar mortgage debt from being discharged,

therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines after the Bankruptcy was discharged. [1]

24.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

25.    Within the Trans Union credit report Plaintiffs noticed that it reported the Nationstar mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

removed from the Nationstar Mortgage tradelines after the Bankruptcy was discharged. [2]

26.      Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

27.      Within the Experian credit report Plaintiffs noticed that it reported the Nationstar mortgage account accurately in contrast to Equifax and Trans Union.

28.      In or around February 2023, Plaintiffs sent direct disputes to Equifax and Trans Union, and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiffs requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Nationstar mortgage account.

29.      Within these dispute letters, Plaintiffs described in great detail the issues and the

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

misreporting following their respective bankruptcies and enclosed copies of either their bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff Thomas Louks's unsigned Dispute Letter to Equifax, Plaintiff Thomas Louks's unsigned Dispute Letter to Trans Union, Plaintiff Tawnya Louks's unsigned Dispute Letter to Equifax, and Plaintiff Tawnya Louks's unsigned Dispute Letter to Trans Union, are each attached hereto as Exhibits "F", "G", "H", and "I" respectively.

30.    Equifax received Plaintiff Thomas Louks's dispute on March 11, 2023. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Plaintiff Thomas Louks's Equifax Dispute Letter is attached hereto as Exhibit "J".

31.    Upon information and belief, Equifax did not respond to Plaintiff  Thomas Louks's dispute.

32.    Plaintiff Thomas Louks then obtained an updated copy of his three-bureau credit report on May 17, 2023 and within the Equifax credit report noticed that the Nationstar tradeline was now missing, presmably deleted rather than modified. A redacted copy of Plaintiff Thomas Louks's May 17, 2023 Three-bureau Credit Report is attached hereto as Exhibit "K".

33.    Equifax responded to Plaintiff Tawnya Louks on March 27, 2023 and concerning the Nationstar tradeline reported it was deleted rather than modified. A redacted copy of Equifax's Response to Plaintiff Tawnya Louks is attached hereto as Exhibit "L".

34.    Plaintiff Tawnya Louks then obtained an updated copy of her three-bureau credit report on May 17, 2023 and within the Equifax credit report noticed that the Nationstar tradeline was missing which confirmed the response. A redacted copy of Plaintiff Tawnya Louks's May 17, 2023 Three-bureau Credit Report is attached hereto as Exhibit "M".

35.    Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar Mortgage tradeline when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the SPS Mortgage account because it was still open following the bankruptcy discharge.

36.    Equifax's responses were not the result of reasonable investigations into Plaintiffs' disputes for they did not adequately evaluate or consider Plaintiffs' information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines.

37.     Plaintiffs sent very clear disputes, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

38.    Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiffs' Nationstar account.

39.    Upon the Plaintiffs' request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

40.    In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

41.    In the alternative to the allegation that Equifax failed to contact Nationstar, it is

alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

42.     Trans Union responded to Plaintiff Thomas Louks on April 1, 2023 and concerning the Nationstar tradeline stated and reported that the tradeline was deleted. A redacted copy of Trans Union's Response to Plaintiff Thomas Louks is attached hereto as Exhibit "N".

43.     Plaintiff Thomas Louks then obtained an updated copy of his three-bureau credit report on May 17, 2023 and within the Trans Union credit report noticed that the Nationstar tradeline was missing which confirmed the response. *See* Exhibit "K".

44.     Trans Union responded to Plaintiff Tawnya Louks on March 31, 2023 and concerning the Nationstar tradeline stated and reported that the tradeline was deleted. A redacted copy of Trans Union's Response to Plaintiff Tawnya Louks is attached hereto as Exhibit "O".

45.     Plaintiff Tawnya Louks then obtained an updated copy of her three-bureau credit report on May 17, 2023 and within the Trans Union credit report noticed that the Nationstar tradeline was missing which confirmed the response. *See* Exhibit "M".

46.     Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar tradeline when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the SPS Mortgage account because it was still open following the bankruptcy discharge.

47.     Plaintiffs sent very clear disputes, and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

48.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiffs' Nationstar account.

49.     Upon the Plaintiffs' request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

50.     In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

51.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

**Background and Credit-Reporting Allegations for the Insight Account**

52.     Plaintiffs had opened a credit card account with Insight Financial Credit Union, Inc. ("Insight")  under the account number 464914204007xxxx, hereinafter ("Insight account").

53.     On May 4, 2017, Plaintiff filed for a Chapter 13 bankruptcy and listed this account as a non-priority unsecured debt. *See* Exhibit "A".

54.     On December 6, 2017, Plaintiffs' Chapter 13 payment plan was confirmed. *See* Exhibit "A".

55.     On September 22, 2022, Plaintiffs received a discharge from bankruptcy and Insight is listed in the notice to creditors. *See* Exhibit "B".

56.     On November 3, 2022, Laurie K. Weatherford, Trustee for Plaintiffs' Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account where Insight is listed as a Scheduled Creditor. *See* Exhibit "C".

57.     On or around December 7, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

58.     In January 2023, Plaintiffs obtained their three-bureau credit report and noticed that the Trans Union credit reports were not accurate. *See* Exhibits "D" and "E".

59.     Within the Trans Union credit report, Plaintiffs noticed that it reported the Insight account as being an open account. This reporting was incorrect because Plaintiffs' Insight credit account was listed in the petition, was discharged in Chapter 13 bankruptcy, and Insight was notified of the discharge. Insight was required to include remarks that the loan was discharged, and could not report that an account was open because it made it appear that the debtor was liable on this discharged debt.

60.     In or around January 2023, Plaintiffs sent direct disputes to Trans Union and requested that the CRA Defendants investigate the reporting of the Insight account. Plaintiffs requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on his credit report concerning the Insight account.

61.     Within the dispute letters, Plaintiffs described in great detail the issues and the misreporting following their bankruptcy and enclosed copies of either their bankruptcy docket report, trustee final report, and/or discharge order. *See* Exhibits "G" and "I".

62.     Trans Union responded to Plaintiff Thomas Louks on April 1, 2023, and to Plaintiff Tawnya Louks on March 31, 2023, and concerning the Insight tradeline continued to show no closed

date. See Exhibits "N" and "O".

63.     Plaintiffs then obtained an updated copy of their updated three-bureau credit report on May 17, 2023, and within the Trans Union credit report noticed that the Insight tradeline still reported as open rather than closed. *See* Exhibits "K" and "M".

64.     Trans Union's responses were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Insight tradelines because they demonstrated this loan was discharged in bankruptcy.

65.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Insight account.

66.     Upon the Plaintiffs' request to Trans Union for verification and addition regarding the Insight account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of their information, claims or evidence and did not make any attempt to substantially or reasonably verify the Insight tradeline.

67.     In the alternative, Trans Union failed to contact Insight, therefore, failed to perform any investigation at all.

68.     In the alternative to the allegation that Trans Union failed to contact Insight, it is alleged that Trans Union did forward some notice of the dispute to Insight, and Insight failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

69.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

70.    Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

71.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

72.    Plaintiffs furnished Equifax the necessary documentation supporting Plaintiffs' tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

73.    Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

74.    After Equifax knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiffs did not request for the Nationstar mortgage tradeline be deleted.

75.    As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

76.    Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In

the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

77.    The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

78.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

79.    Equifax violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

80.    As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

81.    Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

82.    The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

83.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

84.    Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

85.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

86.    Plaintiffs furnished Trans Union the necessary documentation supporting Plaintiffs' tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

87.    Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

88.    After Trans Union knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiffs did not request for the Nationstar mortgage tradeline be deleted.

89.    As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

90.     Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

91.     The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

92.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

93.     Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

94.     As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

95.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

96.     The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in

an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

97.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

98.     Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

99.     Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

100.     As a result of Nationstar's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

101.     Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## COUNT VI – INSIGHT'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

102.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

103.    Defendant Insight violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

104.    Insight further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Insight representation within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Insight representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Insight representations to the consumer reporting agencies.

105.    As a result of Insight's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

106.    Insight's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

107.    Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

108.    Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

109.    Plaintiffs respectfully request that this Honorable Court award Plaintiffs their litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

110.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

111.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in

causing credit denials and other damages.

112.    Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

113.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

114.    Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs, Thomas and Tawnya Louks, pray that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Trans Union LLC, Nationstar Mortgage LLC, and Insight Federal Credit Union, Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state

law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to

Plaintiffs;

C.    Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D.    Order that the CRA Defendants, Equifax Information Services LLC and Trans Union

LLC, and Furnisher Defendants, Nationstar Mortgage LLC and Insight Federal Credit Union, Inc.,

work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer

report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning

Plaintiffs and/or any of Plaintiffs' personal identifiers.

E.    Grant such other and further relief, in law or equity, to which Plaintiffs might show

they are justly entitled.


Date Filed: June 30, 2023


Respectfully submitted,

/s/ Matthew P. Forsberg
Matthew P. Forsberg
TX State Bar No. 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

LAW OFFICE OF JONATHAN A. HEEPS

/s/ Jonathan A. Heeps
Jonathan A. Heeps

TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

June 30, 2023                              /s/ Matthew P. Forsberg
Date                                       Matthew P. Forsberg